539 A.2d 218

Ernest F. **DAVIS**

v.

**STATE of Maryland.**

**No. 2, Sept. Term, 1986.**

Court of Appeals of Maryland.

March 30, 1988.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

---

* SMITH and COUCH, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after

McAULIFFE, Judge.

This appeal involves an increased sentence following retrial. Petitioner contends that the increase is in violation of a Maryland statute or, in the alternative, is prohibited by the Due Process Clause of the United States Constitution. Because we agree that there was a lack of compliance with the requirements of the controlling statute, we shall vacate the sentence without reaching the constitutional issue.

## I. *Facts*

Ernest F. Davis was convicted in 1978, in the Criminal Court of Baltimore, of first degree rape and of a first degree sexual offense. He was sentenced by Judge Albert L. Sklar to life and to ten years imprisonment, the sentences to run concurrently. The convictions were affirmed by the Court of Special Appeals in an unreported opinion. Later, in 1983, Petitioner mounted a successful collateral attack under the Uniform Post Conviction Procedure Act,[1] and Judge James W. Murphy of the Circuit Court for Baltimore City [2] ordered a new trial. Petitioner was retried before a jury in 1984, and was again convicted of the same offenses. Judge Arrie W. Davis rejected the State's request for imposition of a mandatory sentence of not less than 25 years without possibility of parole,[3] and sentenced

being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. Maryland Code (1957, 1987 Repl.Vol.) Art. 27, §§ 645A through 645J.

2. Before 1980, separate courts existed in Baltimore City for the trial of various types of cases. By Chapter 523 of the Acts of 1980, ratified November 4, 1980, the Constitution of Maryland was amended to consolidate the several courts of the Supreme Bench into a single Circuit Court for Baltimore City.

3. Section 643B(c) of Article 27 of the Code mandates the imposition of a sentence of not less than 25 years without possibility of parole where a person has been convicted on two separate occasions of a crime of violence, and certain other criteria have been met. When Petitioner was sentenced in 1978, he was not eligible for mandatory sentencing because he had not been convicted of two crimes of

Petitioner to life imprisonment for rape and 40 years imprisonment consecutive to the life sentence [4] for the sex offense.

Petitioner appealed to the Court of Special Appeals and that Court affirmed the convictions and sentence in an unreported opinion. We granted Davis' petition for certiorari to review the validity of the increased sentence, and at the same time we granted the State's cross-petition to consider the question of whether Davis had properly preserved the issue for appellate review.

## II. *Preservation of Issue*

■ Initially, we reject the State's contention that the principal issue was not preserved. Assuming that some type of objection is required to preserve for appellate review the constitutional and statutory validity of an increased sentence following retrial, it is clear that Petitioner made an appropriate objection here. In a "Memorandum of Law in Opposition to an Increased Sentence" filed two days before resentencing, Petitioner cited § 12–702(b) of the Courts and Judicial Proceedings Article and *North Car-*

violence as then defined by the statute. However, in 1982 the Legislature amended § 643B(a) to include burglary as a crime of violence, and because the Petitioner allegedly had been convicted of burglary in 1963 and in 1967, the State contended he was subject to mandatory sentencing at the time of resentencing. Judge Davis held that the application of the amendment to the statute to Petitioner's case would violate the constitutional protection against *ex post facto* laws, and the State did not appeal from that ruling.

4. Although it is impossible for a prisoner to serve more time than the balance of his natural life, a sentence of imprisonment consecutive to a life sentence is not without practical effect. A person serving an ordinary life sentence becomes eligible for parole consideration at a specific time determinable by reference to Art. 41, § 4–607(b) of the Code. Pursuant to its current interpretation of § 4–607 the Maryland Parole Commission determines that date and then adds to it one fourth of any consecutive term, thus delaying the mandatory consideration date for parole. See C.O.M.A.R. 12.08.01.17(A)(4), and 37 Op. Att'y Gen. 296 (1952). We assume, in the absence of any argument by the State to the contrary, that the sentence imposed by Judge Davis was in fact a more severe sentence than that originally imposed by Judge Sklar.

*olina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in support of his contention that his sentence should not be increased. Moreover, at the sentencing proceeding he repeatedly argued that he could not be given an in-creased sentence in the absence of proof of "identifiable conduct that's happened since the first sentencing," and that no evidence of such conduct sufficient to support a more severe sentence had been produced. Nothing more was required. *See* Maryland Rule 4–322(c) and (d).

### III. *The Statutory Challenge*
#### A.

■ Petitioner contends that his sentence is invalid because there has been no compliance with the requirements of § 12–702(b) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.). That subsection provides:

(b) *Remand for sentence or new trial; limitations on increases in sentences.*

If an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence, or conduct a new trial, and if there is a conviction following this new trial, the lower court may impose any sentence authorized by law to be imposed as punishment for the offense. However, it may not impose a sentence more severe than the sentence previously imposed for the offense unless:

(1) The reasons for the increased sentence affirmatively appear;

(2) The reasons are based upon objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence was imposed; and

(3) The factual data upon which the increased sentence is based appears as a part of the record.

The State argues that § 12–702(b) does not apply to a resentencing following retrial ordered by a trial judge, and alternatively, that the record demonstrates full compliance

with the requirements of the statute. We disagree with the State on both points.

We examined the history and purpose of § 12–702 in *Jones v. State,* 307 Md. 449, 514 A.2d 1219 (1986); *Briggs v. State,* 289 Md. 23, 421 A.2d 1369 (1980); and *Sweetwine v. State,* 288 Md. 199, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980). In *Sweetwine, supra,* 288 Md. at 214, 421 A.2d 60, we opined that by the adoption of § 12–702(b) the Legislature intended to codify the due process holding of *North Carolina v. Pearce, supra. Pearce* created a prophylactic rule to be applied in certain cases involving increased sentences following retrial. After holding that due process requires not only that vindictiveness play no part in the resentencing, but also that a defendant must be freed of apprehension of such a retaliatory motivation, the Supreme Court said:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce, supra,* 395 U.S. at 726, 89 S.Ct. at 2081.

In *Briggs v. State, supra,* we held that the express wording of § 12–702(c) mandated compliance with the requirements of § 12–702(b) in cases involving resentencing following a *de novo* trial on appeal, notwithstanding that the Supreme Court determined in *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), that the prophylactic rule of *Pearce* had no application in such cases. In *Briggs,* we rejected the argument of the State that § 12–702(b) should be interpreted to permit consideration of *conduct* of the defendant occurring prior to the first sen-

tencing provided the *event* permitting its consideration (conviction of an offense involving the conduct) occurred after that sentencing. Although we made passing reference to our perception of the meaning of the language employed by the Supreme Court in *Pearce,* our holding was grounded on the clear meaning of the statute.

In *Jones v. State, supra,* the State argued that because the original intent of the Legislature in enacting § 12–702 was to codify the constitutional doctrine of *Pearce,* we should interpret § 12–702 in accordance with the current Supreme Court interpretation of *Pearce.* Specifically, the State pointed to *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), and *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), as authority for interpreting *Pearce* to permit a different judge to increase the sentence after retrial upon consideration of convictions that had occurred between the first and second sentencing and that involved conduct which occurred before the first sentencing. We acknowledged that *Wasman* and *McCullough* would permit that result, but said we were powerless to go beyond the clear words of the statute.

> [T]he General Assembly did not say "We enact *Pearce* as it now stands or may hereafter be modified by the Supreme Court." It enacted a clear and specific law. The fact that "the scope and thrust of *Pearce* " have been "clarified" in *McCullough* ... or modified in *Wasman* does not change what the statute says, any more than would the statute be repealed were the Supreme Court to overrule *Pearce in toto.* Even if the Supreme Court now believes that due process does not now forbid what it seemed to prohibit in *Pearce* ... that has no bearing on the General Assembly's statutory policy and the intent embodied in it.

*Jones v. State, supra,* 307 Md. at 454–55, 514 A.2d 1219. We further stated that "§ 12–702(b) is a statement of legislative policy that stands independent of current Supreme Court notions of what due process may require." *Id.* at 455, 514 A.2d 1219.

As § 12–702(b) applies when "an appellate court remands" a criminal case for further proceedings, the State contends that the statute cannot apply when a circuit court in a post-conviction proceeding orders a new trial. A post-conviction court does, in some measure, function like an appellate tribunal, and an order directing a new trial is somewhat like a "remand" for a new trial. In light of the legislative policy embodied in § 12–702(b), it does no violence to the statutory language to read "appellate court" to mean "reviewing court" and to read "remands a criminal case ... [for] a new trial" to mean "orders a new trial." *Cf. State v. Loray*, 46 N.J. 417, 217 A.2d 450 (1966) (treating a post-conviction proceeding as an "appeal" within the meaning of statutory language providing for compensation for attorneys); *Stahl v. Board of County Com'rs of Geary County*, 198 Kan. 623, 426 P.2d 134, 137 (1967) (agreeing with *Loray* case).

Our decisions in *Briggs* and *Jones* were in accord with the policy determination of the General Assembly embodied in § 12–702(b). It is a policy determination that, after a defendant successfully challenges a criminal conviction, he may not at a resentencing for the same offense receive a greater sentence than the sentence previously imposed, unless specified statutory conditions are met. Unlike the situation in *Briggs* and *Jones,* the State's position here is clearly inconsistent with the policy determination of the General Assembly. It is also inconsistent with the statutory construction principles set forth in our recent cases. *See, e.g., Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987).

As a matter of statutory construction, this Court has consistently adhered to the principle that we will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality. *See, e.g., Heileman Brewing v. Stroh Brewery*, 308 Md. 746, 763–764, 521 A.2d 1225 (1987); *In re Criminal Investigation*

*No. 1–162,* 307 Md. 674, 685, 516 A.2d 976 (1986); *Davis v. State,* 294 Md. 370, 377, 451 A.2d 107 (1982); *Pickett v. Prince George's Co.,* 291 Md. 648, 661, 436 A.2d 449 (1981); *Prince George's Co. v. Chillum–Adelphi,* 275 Md. 374, 383, 340 A.2d 265 (1975). The interpretation urged by the State generates serious equal protection questions. There may be no rational basis for the discrimination that would result from the State's construction of § 12–702(b). Nothing in the policy underlying the statute justifies the application of different sentencing principles after a retrial, depending upon whether the retrial was ordered by the Court of Special Appeals or by a post-conviction court. Once a retrial is ordered, it should be governed by the same law regardless of the earlier route chosen in vacating the first conviction.

There are, of course, differences between direct appeals and post-conviction proceedings. In many contexts, there may be a rational basis for differentiating between the consequences of a post-conviction proceeding and the consequences of a direct appeal. The distinctions between a post-conviction proceeding and a direct appeal, however, have utterly no relationship to § 12–702(b) or the purposes of that statute. Once a conviction has been finally vacated and a new trial ordered, the defendant should be in the same position regardless of whether the new trial resulted from a direct appeal or from a post-conviction proceeding. There can be no doubt that the principles of *North Carolina v. Pearce, supra,* are fully applicable to a resentencing following a post conviction-proceeding, because *Pearce* itself was such a case.

The distinction advocated by the State makes no more sense than would a distinction in resentencing depending upon whether the resentencing was ordered by the Court of Special Appeals in a direct appeal or by this Court in the exercise of its certiorari jurisdiction. We perceive no reasonable basis for such distinctions.

## B.

Having determined that § 12–702(b) is applicable to the present case, we look to whether there was compliance with the requirements of the statute. Those requirements are threefold: 1) the reasons for the increased sentence must affirmatively appear; 2) those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the original sentence was imposed; and 3) the factual data upon which the increased sentence is based must appear as a part of the record. The first two requirements interact. The second imposes significant limitations [5] upon the nature and quality of evidence that may be used to support an increased sentence, while the first ensures that the record will demonstrate that the increased sentence was in fact based upon those reasons, and no others. The third requirement is simply that any finding of such conduct relied upon by the sentencing judge must have an adequate evidentiary basis in the record.

■ In this case, there was legally sufficient objective evidence of identifiable conduct on the part of the defendant occurring after his first sentencing that could have supported an increased sentence. However, for three reasons we must vacate that sentence.

First, the accuracy of a substantial portion of the evidence relied upon by the State was challenged by Petitioner, and the trial judge did not make any findings with respect to the issues thereby generated. The State sought to prove that during his incarceration subsequent to the first sentencing, Petitioner had: committed numerous infractions; made unjustified complaints; threatened the families of

---

5. These statutory limitations transcend those required by the Due Process Clause of the Constitution. See *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) and *Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

correctional officers; assaulted correctional officers; made repeated complaints about other inmates; and had been in possession of contraband, including a knife made from a broken mirror and home made "wine." Petitioner denied most, if not all, of those allegations. He said that most of the allegations had been investigated by prison officials and the final disposition had been in his favor. He said the contraband had been planted in his cell by other prisoners who were out to get him. He denied making threats to correctional officers, and explained that he was unpopular with inmates and correctional officials because he had caused investigations by his complaints to the Commissioner of Correction and to the Attorney General. He said that "all those infractions that was against me, it was investigated and found out I had nothing to do with it and I was found not guilty." The sentencing judge made no finding as to where the truth lay, and we cannot determine which allegations the judge accepted as proven.

Second, the record does not contain "factual data" to support allegations of subsequent misconduct upon which the State relied. The State attempted to prove Petitioner's post-sentencing conduct by entries made in Petitioner's Division of Correction case record. This case record, required by Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 691, must contain "adequate records of the conduct, effort, and progress of each inmate during confinement...." As required by Art. 27, § 692, the case record also includes a complete record of any violations of institutional discipline and the sanctions imposed. This record, although protected with certain requirements of confidentiality, is available to any State's Attorney or to any judge of a court of this State. Art. 27, § 695. The difficulty here is that although the prosecutor produced a copy of Petitioner's case record, made reference to it, and proffered it to the judge, he did not offer it in evidence or in any other manner seek to preserve it, or any portion of it, as a part of this record. Even if we knew which of the instances of post-sentencing

conduct the trial judge found to have occurred, the record does not contain the factual basis upon which those findings could be based.

Third, the State offered evidence that the statute does not permit to be used to increase a sentence. The trial judge did not make clear the reasons he relied upon, and he has not satisfied the requirement of the statute that "the reasons for the increased sentence affirmatively appear." We, therefore, are unable to determine whether the increased sentence was based upon statutorily permissible information. Specifically, the State, through a presentence investigation report, offered and argued evidence of "new" psychological and financial impact upon the victim that was occasioned by the retrial. That evidence, although relating to matters that had occurred since the first sentencing, did not comport with the requirement of § 12–702(b) that the reasons for increased sentencing be "based upon objective information concerning identifiable *conduct on the part of the defendant* occurring after the original sentence was imposed" (emphasis added).

The requirements of the statute are clear. Although a sentencing judge confronted with the possibility of an increased sentence after retrial need not follow a particular litany, he or she should take care that only the information permitted by the statute is considered with respect to an increased sentence, and that the record affirmatively shows the reasons which were relied upon. Because these requirements of the statute were not met in this case, the sentence must be vacated and the case remanded for further proceedings.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY THE RESPONDENT.